```
                    IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                              AT BLUEFIELD

_____x
                                    :
UNITED STATES OF AMERICA,           :
                                    :
                Plaintiff,          : Criminal Action No.:
        -vs-                        : 1:22-00206
                                    :
KALEB MERRITT,                      :
                                    :
                Defendant.          :
_____x


                       SENTENCING HEARING
              BEFORE THE HONORABLE DAVID A. FABER
                  UNITED STATES DISTRICT JUDGE
                 IN BLUEFIELD, WEST VIRGINIA
                        MARCH 4, 2024
```

**APPEARANCES:**
**For the Government:**   TIMOTHY D. BOGGESS, AUSA
                          UNITED STATES ATTORNEY'S OFFICE
                          United States Courthouse & IRS Complex
                          110 North Heber Street, Room 261
                          Beckley, WV 25801

**For the Defendant:**    EMILY SZOPINSKI, AFPD
                          OFFICE OF THE FEDERAL PUBLIC DEFENDER
                          Suite 3400
                          300 Virginia Street, East
                          Charleston, WV 25301

Probation Officer:    Paradise Nelson

       Proceedings recorded by mechanical stenography, transcript produced by computer.

                    _____
                      AMANDA J. PICKENS, CCR, RPR, FCRR
                        Federal Official Court Reporter
                         Robert C. Byrd U.S. Courthouse
                          300 Virginia Street, East
                            Charleston, WV  25301

*Amanda J. Pickens, RPR, CCR, FCRR (304) 347-3188*

1          (The following proceedings were held before the
2   Honorable David A. Faber, United States District Judge, in
3   the case of *United States of America v. Kaleb Merritt,* on
4   March 4, 2024, at Bluefield, West Virginia, beginning at
5   2:18 p.m.)
6          THE COURT:  The case before the Court is the
7   United States against Kaleb Merritt.
8      Would you note your appearances, please?
9          MR. BOGGESS:  Tim Boggess, Assistant U.S. Attorney
10  for the United States.
11         MS. SZOPINSKI:  Good afternoon, Your Honor.
12  Emily Szopinski on behalf of Mr. Merritt.
13         THE COURT:  Ms. Szopinski, have you had an
14  opportunity to read the presentence report with your client?
15  Are you prepared to go forward today?
16         MS. SZOPINSKI:  Yes, Your Honor.
17         THE COURT:  The presentence report is accepted and
18  ordered filed and made a part of the record.  It will be
19  placed in the record under seal.  In the event of an appeal
20  of the sentence, counsel on appeal will be permitted access
21  to the sealed report except for the recommendations set
22  forth.  Except as may be modified by specific rulings made
23  at this hearing, the Court adopts as its findings the facts
24  and conclusions contained in the presentence report.
25         In order to fulfill its reporting obligation under

```
 1    Rule 32 of the Federal Rules of Criminal Procedure, the
 2    Court directs that a copy of the sentencing memorandum --
 3    written memorandum of the sentencing hearing and the Court's
 4    statement of reasons be appended to and accompany any copy
 5    of the presentence report made available to the Bureau of
 6    Prisons.  The Court has withheld no information under
 7    Rule 32.
 8         Were there any matters in dispute requiring a ruling of
 9    the Court at this hearing?
10         Mr. Boggess?
11            MR. BOGGESS:  None from the United States, Your
12    Honor.
13            THE COURT:  Ms. Szopinski?
14            MS. SZOPINSKI:  Nothing that I think will be in
15    dispute, Your Honor.  But I just wanted to note that I spoke
16    with Mr. Merritt and there was one physical health condition
17    that we would ask be included in the presentence report.
18    Mr. Merritt has a high umbilical hernia.  And I would just
19    ask that the Court add that into the PSR so that he can get
20    medical treatment for that when he's in BOP custody.
21              THE COURT:  Can that be added to the PSR?
22              PROBATION OFFICER NELSON:  Yes, Your Honor.
23              THE COURT:  All right.  It will be.
24              MS. SZOPINSKI:  Thank you, Your Honor.
25              THE COURT:  Mr. Merritt, pursuant to the
```

1    sentencing guidelines at your original plea hearing on
2    November 13th of last year, the Court deferred an
3    adjudication of guilt pending receipt of the presentence
4    report.  Having now received that report, the Court finds
5    that the charge in which you are pleading guilty adequately
6    reflects the seriousness of the offense behavior.  And I
7    find that accepting the plea agreement will not undermine
8    the statutory purposes of sentencing.
9        You were charged in a single-count indictment and
10   pleaded guilty to that indictment which charged you with
11   being a felon in possession of a firearm in violation of 18
12   U.S.C. Sections 922(g)(1) and 924(a)(8).
13       The Court finds that the guidelines allow for a
14   sentence that will provide adequate deterrence, just
15   punishment, a sufficient period of incapacitation and a
16   suitable opportunity for rehabilitation.
17       Therefore, I now find you guilty and you stand
18   convicted of the offense to which you agreed to plead guilty
19   under your plea agreement and you stand convicted before the
20   Court.
21       The Court further concludes and finds that the
22   guideline calculations are:  A Base Offense Level of 20 and
23   a Total Offense Level of 17, the Court having granted a
24   three-level total downward adjustment for acceptance of
25   responsibility, there being no objection by the Government

1   to the third level.  The Criminal History Category is III.
2   The Guideline Range is thus imprisonment for 30 to
3   37 months, supervised release for a period of 1 to 3 years,
4   a fine of $10,000 to $95,000, plus the cost of incarceration
5   and supervision and a special assessment of $100.
6        Is there any objection to the Court's calculation to
7   the guideline?
8             MR. BOGGESS:  No, Your Honor.
9             MS. SZOPINSKI:  No, Your Honor.
10            THE COURT:  I've received one letter on behalf of
11  the defendant, which will be filed with the presentence
12  report and made a part of the record.
13       Ms. Szopinski, I'll hear anything you care to say as to
14  what an appropriate sentence might be.
15            MS. SZOPINSKI:  Thank you, Your Honor.
16       Your Honor, Mr. Merritt is asking the Court to impose a
17  sentence of 30 months of incarceration.  In support of that,
18  I would note that Mr. Merritt has had an incredibly
19  challenging young adulthood.  He grew up with his
20  grandmother.  He was raised primarily by his grandmother.
21  But when his grandmother got cancer, he was sent to live
22  with his mother who had pretty significant substance abuse
23  issues.  She ultimately kicked him out of the house when he
24  was only 17 years old and he found himself homeless and he
25  moved to Bluefield at that time.

1              Being only 17, homeless and still a teenager,
2    Mr. Merritt was pretty lost.  He met Amy Martin, who you
3    have read a letter of support from, at that time and she
4    provided some guidance to him.  She became a mother figure
5    to Mr. Merritt that he didn't really have in his life.
6              When Mr. Merritt was only 18, he got in trouble with
7    the law for the first time.  He was convicted of first
8    degree arson over an event that transpired between -- in a
9    fight between him and his girlfriend in which he lit her
10   pillows on fire.  This is -- you know, arson is a serious
11   charge, but the events that led to him getting his first
12   felony conviction at 18 were relatively minimal.  And I
13   would also note that that arson charge changes the Base
14   Offense Level in this case from 14 to 20.  If Mr. Merritt
15   did not have that underlying arson charge, his guideline
16   range in this case would be 15 to 21 months.  And that arson
17   charge, again, was for him lighting pillows on fire.
18             That felony conviction set him up for some further
19   struggles in his 20s.  He spent time incarcerated when he
20   was still a teenager and in his early 20s.  But when he was
21   released from custody, at that point, he was doing well.  He
22   started attending classes at Bluefield State.
23             But several months after he began taking classes, he
24   was picked up on a first degree murder charge.  That is a
25   serious charge in which he didn't have involvement in the

1  situation.  It was a charge that was ultimately dismissed
2  and he was not convicted of, but has carried serious
3  consequences for him.  The victim of that first degree
4  murder's family and friends all live in the area and were
5  not happy.  They were very upset that that charge against
6  Mr. Merritt was dismissed.  I don't believe anyone was ever
7  convicted for that crime.  I think that everybody involved,
8  anybody charged was convicted of lesser offenses.
9      Because of that, Mr. Merritt has faced a lot of danger
10 in this area.  The friends and family of the victim in that
11 case were understandably upset that nobody was convicted for
12 it, but Mr. Merritt was in grave danger.  He had received
13 death threats.  His house was shot up.  And so that -- I
14 just -- that provides the context for Mr. Merritt possessing
15 the firearm in this case.
16     When he was released from custody on that offense, he
17 was doing well.  The day that he was released, he began
18 working at Aspen Tree Services.  He was working at Foutier's
19 [phonetic] Lawn Services and he was working at
20 Cracker Barrel.  He was enjoying it.  He was enjoying the
21 work.  But he was living in this area and he was still under
22 threats from the family -- friends and family members of the
23 victim and that was why he began carrying a firearm even
24 though he knew he was prohibited from doing so.  He did it
25 only for his own protection.

1   That being said, Mr. Merritt has demonstrated that he
2   can live a productive and law-abiding life.  He loved
3   working at Cracker Barrel.  He enjoyed cooking for people.
4   He has a culinary arts certificate from his time in
5   incarceration and he enjoyed utilizing that and providing
6   meals to people.  He put his heart and soul into that job.
7   And he looks forward to finding a new job similar to that
8   when he is released from custody.
9       Mr. Merritt understands that he's facing a term of
10  incarceration.  But above all when he is released from
11  incarceration, he knows that the thing for him to do is to
12  get out of Bluefield.  He has plans to change his release
13  residence to Charleston, West Virginia, a place where he can
14  be close to his family but be safe from the threats that
15  he's experienced while in Bluefield.
16      A sentence of 30 months of incarceration is sufficient
17  but not greater than necessary in this case to give
18  Mr. Merritt the opportunity to get further vocational
19  training, which is something he is eager to do in BOP
20  custody and to be released and start a law-abiding life in a
21  new place where he is safe to do so.
22      Thank you, Your Honor.
23          THE COURT:  Mr. Merritt, I'll hear anything you
24  care to say.
25          THE DEFENDANT:  Okay.  Yes, Your Honor.  First of

1   all, I want to apologize to the court system, my community,
2   my family, my friends, as well as myself.  You know, at the
3   time of my -- this incident, I was thinking self-centered,
4   simple-minded.  I didn't quite understand, you know, how my
5   actions would affect everyone else because I was so, you
6   know -- I was so in fear of how I had to protect myself that
7   I didn't realize that I could possibly, you know, put other
8   people in danger with my actions or with me being a felon in
9   possession of a firearm, you know.
10          Since I've been incarcerated this time, I've matured in
11  a lot of ways.  I've grew within myself and learned that,
12  you know, I had the mindset to change when I was out this
13  last time, but I was provided the wrong formula because I
14  was released in the same area.  Given my living situations,
15  I didn't have the funds to just up and move, so ...  Like my
16  lawyer spoke on, you know, I was into a lot of conflict with
17  my victim's family and friends and relatives, but I just
18  didn't have the funds to up and move.  So it's kind of
19  something I just had to live with then, you know.
20          And as she spoke on, my house was shot up in May of
21  2021.  Which at that time, I noticed -- I notified my
22  current home confinement officer, Sheriff Bailey, you know.
23  And he kind of gave me his personal number with a promise to
24  like show up anytime I need him, spur of the moment.  But
25  that just didn't provide, you know, the security I needed to

1    feel like I was protected or to protect my family.  So at
2    that time, I went about it to gain access to a firearm.  You
3    know, it wasn't to premeditatedly hurt nobody.  It wasn't to
4    cause trouble to the community.  Like she said, I was still
5    going to work every day.  When I got arrested on this
6    offense, I was at work, you know.
7         Since then, you know, I stopped the formula.  And
8    that's me changing my area.  So I'm going to myself to --
9    hopefully parole somewhere -- to Charleston somewhere where
10   nobody knows me to where I don't have no danger.  You know,
11   I can be accepted for who I am, you know.  I've learned
12   within myself that I'm more than just, you know, an
13   individual with tattoos all over his face.  You know, I look
14   like I'm a menace to the community, but I've learned that,
15   you know, I've got dreams and aspirations just as well as
16   anybody in the courtroom.  I just didn't know how to quite
17   follow them and provide it for myself.  But I feel like this
18   time when I get out, due to me changing my area, I'll know
19   how to follow -- I'll know how to gain access to every
20   aspiration I've ever had.  And I'm willing.  I'm ready to
21   chase -- I'm ready to, you know, hopefully gain access back
22   to prove to you as soon as possible so I can be an
23   outstanding member of society.  I just thank you for giving
24   me the opportunity to speak.  That's all.
25             THE COURT:  Thank you.

1        Mr. Boggess?

2            MR. BOGGESS:  Your Honor, this is a very serious
3   case and the United States brought that case for a reason.
4        When you look at the defendant's criminal history, it
5   is somewhat concerning.  The fact that he had an arson that
6   was stemming from a domestic violence type situation is very
7   concerning to the United States.  Not only did he serve time
8   for that and not learn his lesson, but then he was involved
9   in another incident where he was charged with first degree
10  murder, as defense counsel said, but ultimately pled to a
11  conspiracy after doing approximately two years in prison.
12  That -- charges brought were also relating to a first degree
13  robbery in possession of a firearm.
14       Then less than two years after -- around two years
15  after that incident, he's caught with a firearm once again.
16  It is this type of a defendant that is real -- oftentimes
17  contemplated by the law in trying to prevent these types of
18  defendants from possessing firearms.
19       And so the United States is requesting for a guideline
20  sentence at the upper end of the guideline.  Not just to
21  deter this defendant, which previous sentences have seemed
22  to be ineffective in deterring him from further engaging in
23  criminal activity, but also to deter other defendants like
24  situated from engaging in this type of activity.  For that
25  reason, the United States is requesting a guideline sentence

1  at the upper end of the guidelines in this matter.
2          THE COURT:  All right.  If you'll stand up there
3  with your counsel, I'm prepared to sentence you.
4          Pursuant to the Sentencing Reform Act of 1984, it's the
5  judgment of the Court that the defendant, Kaleb Merritt is
6  hereby committed to the custody of the Bureau of Prisons to
7  be in prison for a term of 36 months.
8          Upon release from imprisonment, the defendant shall be
9  placed on supervised release for three years.  Within
10 72 hours of release from custody of the Bureau of Prisons,
11 the defendant shall report in person to the probation office
12 in the district to which the defendant is released.
13         While on supervised release, the defendant shall not
14 commit another federal, state or local crime and shall
15 comply with the mandatory standard and additional standard
16 conditions adopted by this Court, all of which were listed
17 at length in the presentence report, and therefore placed
18 the defendant and his counsel on notice of them, so I feel
19 no reason to read them all into the record in view of that.
20         The defendant shall also comply with the following
21 special condition.  The Court orders the defendant to pay
22 $100 special assessment, which has not been paid.  It is due
23 immediately.  If he can't afford to pay it immediately, it
24 may be paid in installments of not less than $25 a quarter
25 through participation of the Bureau of Prisons Inmate

1  Financial Responsibility Program, with any remaining balance
2  to be paid during his term of supervised release at a
3  minimum of installments of no less than $25 a month, with
4  the first installment to be paid within 30 days of release
5  from incarceration until the full amount has been paid.
6       The Court finds the defendant does not have the
7  financial means to impose the guideline range fine and
8  departs downward and imposes no fine.
9       Is there any objection to the form of the sentence,
10 Mr. Boggess?
11           MR. BOGGESS:  Nothing from the United States.
12           THE COURT:  Ms. Szopinski?
13           MS. SZOPINSKI:  Nothing, Your Honor.
14           THE COURT:  All right.  You may be seated while I
15 give the reasons.
16      I'm also going to recommend -- I note in paragraph 43
17 of the presentence report, there's an indication that the
18 defendant was diagnosed and treated throughout his childhood
19 for schizophrenia.  He was medicated and he stopped taking
20 his medication once he turned 18, according to this
21 paragraph in the PSI.  That's based on information from his
22 older sister, Kelsey Erving.  In view of that fact, the
23 Court recommends the Bureau of Prisons to make a thorough
24 mental evaluation of the defendant and take any action that
25 is suggested by that evaluation.

1           The Court believes that a sentence near the top of the
2    guidelines is justified in view of the defendant's previous
3    criminal record and the incidences of the serious misconduct
4    pointed out by the Assistant U.S. Attorney a few minutes
5    ago.
6           The Court believes that a sentence near the top of the
7    guidelines is sufficient but not greater than necessary to
8    adequately punish the defendant for his serious offense
9    behavior, to instill within the defendant and the public the
10   proper respect for the law and to provide for a proper
11   period of incapacitation and rehabilitation.
12          The Court believes that a sentence less than the
13   36 months imposed would not be sufficient to satisfy those
14   conditions.
15          In reaching my decision as to the proper term of
16   imprisonment, I considered all the factors under 18 U.S.C.
17   3553(a) as well as the directives and applicable case law
18   and I believe the sentence is sufficient but not greater
19   than necessary to achieve the objectives set forth in those
20   authorities.
21          The term of supervised release imposed is allowed -- is
22   designed to allow for monitoring of the defendant's efforts
23   to obtain a law-abiding lifestyle following his period of
24   incarceration.
25          In imposing no fine, the Court makes the following

1    findings under 18 U.S.C. Section 3572(a).  The defendant's
2    income, earning capacity and financial resources are as
3    stated in the presentence report.  A fine in any amount
4    would constitute an undue burden upon the defendant in view
5    of his financial situation.  There is no identifiable
6    pecuniary loss inflicted upon others as a result of the
7    offense of conviction and the evidence shows no illegally
8    obtained gains from the offense of conviction remaining in
9    the defendant's possession.
10        Mr. Merritt, you have 14 days to appeal.  If you wish
11   to appeal, you must file within that period of time a notice
12   of appeal with the Clerk of this Court.  If you wish to
13   appeal and cannot afford to hire counsel to represent you,
14   the Court will appoint counsel for you.  And if you so
15   request, the Clerk of Court will prepare and file forthwith
16   a notice of appeal on your behalf.
17        Is there anything further to take up with regard to
18   this matter today?
19        Mr. Boggess?
20            MR. BOGGESS:  Nothing further from the United
21   States, Your Honor.
22            MS. SZOPINSKI:  Your Honor, we would just ask that
23   you make a recommendation that Mr. Merritt be housed
24   somewhere as close to the Charleston and Bluefield area as
25   possible so that he can be close to his family.

```
 1              THE COURT:  All right.  I will make that
 2   recommendation.
 3              MS. SZOPINSKI:  Thank you, Your Honor.
 4              THE COURT:  Anything else?
 5              MS. SZOPINSKI:  Nothing from us, Your Honor.
 6              THE COURT:  If not, this hearing is concluded.
 7   The defendant's remanded to custody.
 8         (Proceedings concluded at 2:39 p.m., March 4, 2024.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

*Amanda J. Pickens, RPR, CCR, FCRR (304) 347-3188*

```
 1   CERTIFICATION:
 2        I, Amanda J. Pickens, Federal Official Court Reporter,
 3   certify that the foregoing is a true and correct transcript
 4   from the record of proceedings in the above-entitled matters
 5   as reported on March 4, 2024.
 6
 7        s/Amanda J. Pickens, CCR, RPR, FCRR   May 22, 2024
 8        Amanda J. Pickens, CCR, RPR, FCRR
          Federal Official Court Reporter
 9
```